**Nos. 23-2397, 23-2398**

# United States Court of Appeals
# for the Federal Circuit

STRYKER EUROPEAN OPERATIONS HOLDINGS LLC,
*Appellant*

v.

OSTEOMED LLC,
*Appellee*

Appeals from the United States Patent and Trademark Office, Patent Trial and
Appeal Board in Nos. IPR2022-00487, IPR2022-00488

## APPELLEE'S RESPONSE BRIEF

**K&L GATES LLP**

Devon C. Beane
Jason A. Engel
Jonah Heemstra
70 W. Madison Street, Suite 3300
Chicago, IL 60602
(312) 807-4436
devon.beane@klgates.com

*Attorneys for Appellee*

April 25, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-2397, 23-2398 |
| **Short Case Caption** | Stryker European Operations Holdings LLC v. OsteoMed LLC |
| **Filing Party/Entity** | OsteoMed LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/25/2024

Signature: /s/ Devon C. Beane

Name: Devon C. Beane

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

☐ None/Not Applicable |
| OsteoMed LLC | Acumed LLC | Acumed LLC |
| | Colson Medical, LLC | Colson Medical, LLC |
| | Marmon Holdings, Inc. | Berkshire Hathaway Inc. |
| | Berkshire Hathaway Inc. | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable               ☐  Additional pages attached

| | | |
|---|---|---|
| Katherine Allor (formerly of K&L Gates LLP) | | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)     ☐  No     ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable               ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................. 1

STATEMENT OF THE ISSUES ........................................................... 3

STATEMENT OF THE CASE ............................................................... 4

    I.      TECHNOLOGICAL BACKGROUND ..................................... 4

        A.    The Challenged Patents .................................................... 4

        B.    The Relevant Prior Art References ................................... 7

            1.    Arnould ................................................................. 7

            2.    Zahiri ..................................................................... 9

            3.    Myerson '608 ....................................................... 10

            4.    Myerson '592 ....................................................... 10

    II.     PROCEDURAL BACKGROUND .......................................... 11

SUMMARY OF THE ARGUMENT ..................................................... 15

ARGUMENT ...................................................................................... 17

    I.      STANDARD OF REVIEW .................................................... 17

    II.     THE BOARD CORRECTLY UNDERSTOOD THE "THIRD HOLE LIMITATIONS" (Both Proceedings) ........................... 18

        A.    Appellant Forfeited Its Claim Construction Arguments .................... 18

        B.    Appellant's New Appeal Arguments Violate Fundamental Tenets Of Claim Construction Law .................................... 19

            1.    Appellant's Construction Improperly Reads Out The Preferred Embodiment ........................................... 20

            2.    Appellant Confusingly Lumps Together The Third Hole Limitations, But Focuses Its Analysis On Language Unique To The '713 Patent .................... 23

3.    Appellant Erroneously Rewrites The Claim Absent Any Intrinsic Support ....................................................................... 26

III.   ARNOULD ALONE OR ARNOULD IN COMBINATION WITH ZAHIRI TEACH THE THIRD HOLE LIMITATIONS (Both Proceedings) .................................................................................... 28

A.    Arnould Alone Renders Obvious The Third Hole Limitations ..........28

B.    Arnould In View Of Zahiri Renders Obvious The Third Hole Limitations .................................................................................32

IV.    ARNOULD ALONE OR ARNOULD IN COMBINATION WITH ZAHIRI TEACH TEMPORARY FIXATION (Both Proceedings) ....... 33

V.    THE BOARD CORRECTLY DETERMINED THAT A POSITA WOULD HAVE BEEN MOTIVATED TO COMBINE ARNOULD AND ZAHIRI (Both Proceedings) ........................................................... 38

A.    The Board Considered The Propriety Of Combining The Teachings Of Arnould And Zahiri In Detail And Correctly Determined Substantial Evidence Supported The Combination ...........................39

B.    Appellant's Arguments Regarding The Combination Of Arnould And Zahiri Fail ...................................................................41

1.    Mr. Sherman's Testimony Is Not Conclusory ......................... 42

2.    The Board Considered Dr. Holmes' Testimony, Yet Found Mr. Sherman To Be More Credible ................................................. 43

3.    The Substantive Differences Of The Companion Cases Makes Them Irrelevant To This Case ................................................. 44

4.    The Board Considered Appellant's Remaining Challenges To The Arnould And Zahiri Combination And Properly Rejected Them ................................................................................ 46

VI.    ARNOULD, ZAHIRI, AND MYERSON '608 RENDER OBVIOUS CLAIMS 34 AND 35 OF THE '713 PATENT ('713 Patent Proceeding) ................................................................................. 49

VII.  THE BOARD PROPERLY CONSTRUED THE TERM "BETWEEN" IN THE '751 PATENT AND DETERMINED THAT THE LIMITATION WAS TAUGHT IN THE ART ('751 Patent Proceeding) ............................................................. 50

    A.  The Board's Decision To Reject Appellant's Construction Of "Between" Should Be Affirmed ........................................... 51

        1.  The Intrinsic Record Supports The Board's Construction Of "Between" ................................................................. 51

        2.  Appellant Erroneously Resorts To Extrinsic Evidence To Undermine The Plain Meaning Of "Between" ....................... 53

        3.  Appellant Acknowledges Its Proposed Construction Lacks Clarity ................................................................. 55

    B.  The Board Properly Concluded The Prior Art Renders Obvious "A Third Hole Between Said First Hole And Said Second Hole" ........... 56

        1.  Substantial Evidence Of Obviousness Exists Based On Arnould ................................................................. 56

        2.  Substantial Evidence Of Obviousness Exists Based On Arnould In View Of Zahiri ....................................... 60

VIII.  THE BOARD CORRECTLY FOUND CLAIM 6 OF THE '751 PATENT OBVIOUS OVER ARNOULD, ZAHIRI, MYERSON '592, AND THE KNOWLEDGE OF A POSITA ('751 Patent Proceeding) ............................................................. 61

IX.  THE BOARD CORRECTLY FOUND THE PETITION SATISFIED 35 U.S.C. § 312(a)(3) ('751 Patent Proceeding) ................................... 65

    A.  The Board's Decision To Institute Is Not Appealable ....................... 65

    B.  The Body Of The Petition Articulated The Challenged Claims, Grounds On Which The Challenges Were Based, And Evidence Supporting The Grounds ........................................................ 66

    C.  Appellant's Cited Cases Are Irrelevant To The Issue At Hand ......... 67

CONCLUSION ................................................................................... 68

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*AC Techs. S.A. v. Amazon.com, Inc.*,
  912 F.3d 1358 (Fed. Cir. 2019) ........................................17

*Acumed LLC v. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007) ....................................2, 53

*Barrday, Inc. v. Lincoln Fabrics Inc.*,
  No. 2022-1903, 2023 WL 7871688 (Fed. Cir. Nov. 16, 2023) ..........................22

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ........................................25

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) ......................................19

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
  460 F.3d 1349 (Fed. Cir. 2006) ..................................15, 55

*Corephotonics, Ltd. v. Apple Inc.*,
  84 F.4th 990 (Fed. Cir. 2023) ........................................64

*Cuozzo Speed Techs., LLC v. Lee*,
  136 S. Ct. 2131 (2016).............................................65, 66

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
  979 F.3d 1353 (Fed. Cir. 2020) ......................................67

*Elekta Ltd. v. ZAP Surgical Sys., Inc.*,
  81 F.4th 1368 (Fed. Cir. 2023) ..................................17, 33

*Finjan, Inc. v. Cisco Sys.*,
  837 F. App'x 799 (Fed. Cir. 2020) ..............................18, 19

*Google Inc. v. Intellectual Ventures II LLC*,
  701 F. App'x 946 (Fed. Cir. 2017) ..................................43

*Google LLC v. EcoFactor, Inc.*,
  92 F.4th 1049 (Fed. Cir. 2024) ..................................23, 52

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)..........................................................................45

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
  445 F.3d 1348 (Fed. Cir. 2006) .....................................................21

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
  941 F.3d 1133 (Fed. Cir. 2019) .....................................................17

*MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007) ...........................................2, 21, 52

*Merck & Cie v. Gnosis S.P.A.*,
  808 F.3d 829 (Fed. Cir. 2015) ...............................................17, 38, 65

*Net MoneyIN, Inc. v. Verisign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008) .....................................................45

*Netflix Inc. v. DivX, LLC*,
  No. 2022-1043, 2023 WL 3115576 (Fed. Cir. Apr. 27, 2023)..........67

*Netflix, Inc. v. DivX, LLC*,
  84 F.4th 1371 (Fed. Cir. 2023) .................................................67, 68

*Oatey v. IPS Corp.*,
  514 F.3d 1271 (Fed. Cir. 2008) ................................................*passim*

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
  386 F.3d 1133 (Fed. Cir. 2004) ...........................................2, 20, 52

*Parkervision, Inc. v. Vidal*,
  88 F.4th 969 (Fed. Cir. 2023) .................................................58, 59

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................*passim*

*Promptu Systems Corp. v. Comcast Corp.*,
  92 F.4th 1372 (Fed. Cir. 2024) .....................................................54

*Rembrandt Diagnostics, LP v. Alere, Inc.*,
  76 F.4th 1376 (Fed. Cir. 2023) .....................................................35

*Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*,
   896 F.3d 1322 (Fed. Cir. 2018) ........................................................... 65

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013) ........................................................... 21

*Tehrani v. Hamilton Techs. LLC*,
   No. 2022-1732, 2023 WL 4231628 (Fed. Cir. June 28, 2023), *cert.
   denied*, No. 23-575, 2024 WL 674746 (U.S. Feb. 20, 2024) ...................... 33, 44

*TQ Delta, LLC v. Cisco Systems, Inc.*,
   942 F.3d 1352 (Fed. Cir. 2019) ........................................................... 43

*Transtex Inc. v. Vidal*,
   No. 2020-1140, 2023 WL 1487425 (Fed. Cir. Feb. 3, 2023) ...................... 33, 49

*Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*,
   366 F.3d 1311 (Fed. Cir. 2004) ........................................................... 21

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
   853 F.3d 1272 (Fed. Cir. 2017) ........................................................... 25

**Statutes**

35 U.S.C. § 312 ........................................................... 4, 65, 68

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from the same IPR proceedings has previously been before this or any other appellate court.

This consolidated appeal relates to U.S. Patent Nos. 9,078,713 ("the '713 Patent") and 10,993,751 ("the '751 Patent") (collectively, "Challenged Patents"). Appellant asserted the Challenged Patents against Appellee as counterclaims in *OsteoMed LLC v. Stryker Corporation*, Case No. 1:20-cv-06821 (N.D. Ill.). This case remains stayed pending resolution of this appeal. There is also a set of companion cases pending in this Court concerning Appellee's patents captioned *Stryker Corporation v. OsteoMed LLC*, Case Nos. 23-1925, 23-1926, 23-1928, 23-1929, 23-1979, 23-2010, 23-2011, 23-2012 (Fed. Cir.).

## **INTRODUCTION**

Appellant's brief presents a myriad of disputes with the Board's decisions below, not only appealing nearly every issue decided, but also appealing issues Appellant did not present below and issues that are not even appealable. And, to succeed on appeal as to all of the Challenged Claims[1] and remand this case back to the Board, Appellant needs to win on nearly every issue presented.

Appellant begins with an issue it freely admits it did not ask the Board to determine, spending nearly 10% of its brief arguing its claims should be construed to exclude the preferred embodiment of its Challenged Patents. ECF No. 22 at 22, 56. A litigant cannot hold back a construction dispute below in hopes of preserving the claims' validity while at the same time keeping them broad for infringement purposes. But that is exactly what Appellant has done. Only when the Board rejected the Challenged Claims does Appellant seek an extraordinarily narrow construction from this Court (under de novo review) to revive its unpatentable claims.

Even if this Court wades into Appellant's request on appeal to exclude the preferred embodiment of the Challenged Patents, nothing in the intrinsic evidence supports departing from this Court's guidance that "a claim interpretation that

---

[1]   The "Challenged Claims" are claims 32-39 of the '713 Patent and claims 1-3 and 6-18 of the '751 Patent.

excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004). Where, as here, "claims can reasonably to interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary." *Oatey v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008). With the proper claim construction in hand, this Court can easily dispose of a significant portion of this appeal as Appellant does not dispute—nor can it—that E.P. Patent No. 1,897,509 to Arnould ("Arnould") teaches the limitations of the Challenged Claims to a POSITA.

With respect to the '751 Patent, Appellant argues for a construction of the term "between" similarly untethered from the language of the claim or the specification. Appellant's proposal uses "a broad dictionary definition…whittled down only if contradicted by the specification," an approach this Court typically rejects. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 n.2 (Fed. Cir. 2007); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1320-21 (Fed. Cir. 2005) (en banc) (citing *Texas Digital Systems, Inc. v. Telegenix*, 308 F.3d 1193, 1204 (Fed. Cir. 2002)). Moreover, Appellant's narrow construction of "between" should be rejected as it again excludes the preferred embodiment. *Oatey*, 514 F.3d at 1276-77; *MBO Lab'ys, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007). Substantial evidence supports the Board's determination that Arnould alone renders

the Challenged Claims of the '751 Patent obvious based on the plain meaning of "between."

The remaining issues presented in Appellant's brief provide no basis to reverse the Board's decisions, as detailed further below. The Board's decisions concluding the Challenged Claims are unpatentable as obvious in light of the prior art of record are supported by substantial evidence and should be affirmed.

## STATEMENT OF THE ISSUES

1.    **(Both Proceedings)** Whether the Board properly interpreted the "third hole being angled relative to a longitudinal axis of the plate through a thickness of the plate" ('713 Patent, cl. 32); the "third hole is angled relative to the longitudinal axis of said bone plate" ('751 Patent, cl. 1); and "said third hole being angled relative to said bone plate…" ('751 Patent, cl. 17) (collectively, the "Third Hole Limitations") as encompassing the preferred embodiment in the Challenged Patents?

2.    **(Both Proceedings)** Whether substantial evidence supports the Board's decision that Arnould alone or Arnould in view of Zahiri render obvious the Third Hole Limitations?

3.    **(Both Proceedings)** Whether substantial evidence supports the Board's decision that Arnould alone or Arnould in view of Zahiri render obvious the claims of the Challenged Patents regarding temporary fixation?

4.    **(Both Proceedings)** Whether substantial evidence supports the Board's decision that a POSITA would be motivated to modify the disclosure of Arnould in light of the teachings of Zahiri?

5.    **('713 Patent Proceeding)** Whether substantial evidence supports the Board's decision that a POSITA would be motivated to modify the disclosure of Arnould or Arnould and Zahiri in light of the teachings of U.S. Pat. Pub. No. 2006/0241608 to Myerson et al. ("Myerson '608")?

6.    **('751 Patent Proceeding)** Whether the Board properly rejected Appellant's overly narrow view of "between" as used in the claims of the '751 Patent and interpreted the term consistently with the intrinsic and extrinsic evidence?

7.    **('751 Patent Proceeding)** Whether substantial evidence supports the Board's decision that a POSITA would be motivated to modify the disclosure of Arnould or Arnould and Zahiri in light of the teachings of U.S. Pat. Pub. No. 2006/0241592 to Myerson ("Myerson '592")?

8.    **('751 Patent Proceeding)** Whether Appellant's challenge that the Petition failed to comply with 35 U.S.C. § 312(a)(3) is properly appealable?

## STATEMENT OF THE CASE

### I.    TECHNOLOGICAL BACKGROUND

#### A.    The Challenged Patents

Bone plates for fracture fixation and joint stabilization have been used for over

a century.  Appx748, ¶¶34-35.  Early bone plates suffered a variety of challenges,

including corrosion of the plate and over-rigidity that failed to permit sufficient bone

movement during healing.  *Id.*, ¶35.  To solve these challenges, practitioners in the

late 1940s began applying compression across fracture fragments with the goal of

minimizing motion, thereby increasing stability as the fracture healed.  Appx749-

750, ¶¶36-37.  For example, a 1982 manual regarding orthopedic techniques for

smaller bones, such as those in the hand, depicts using a dorsal plate with a screw

that crosses a cut bone.



c Internal fixation with a dorsal plate. The central screw should cross the osteotomy and is inserted preferably as a lag screw

*Id.*, ¶¶38-39.

The Challenged Patents similarly describe and claim methods for fusing bone

fractures and joints using a screw that crosses a bone discontinuity.  Appx753, ¶44

(citing Appx108, 1:20-22); Appx3673, ¶44 (citing Appx111, Abstract).    The

specification of the Challenged Patents spans less than two columns.   Appx108.[2]

Each figure shows a plate with an angled hole on a formation in the plate through

which a screw extends to cross a bone discontinuity.



Fig. 2



Fig. 3

[2]   The Challenged Patents share a common specification.  The citations throughout
this brief are to the '713 Patent unless noted otherwise.

6

Appx106, Fig. 2; Appx107, Fig. 3; *see also* Appx106-107, Appx108, 2:16-17, 2:28-29. Specifically, as depicted in Figure 3, the illustrated bone plate spans from a first bone to a second bone and incorporates a screw that extends through an angled formation and passes across the joint from the first bone to the second bone. Appx754 (citing Appx108, 2:8-17).

## B. The Relevant Prior Art References

### 1. Arnould

Arnould describes a plate for arthrodesis of the metatarsal-phalangeal ("MTP") joint in the foot. Appx1155, ¶1. The plate straddles the MTP joint and locks the joint in place. *Id.*, ¶¶1-2. Figure 1 shows the plate affixed to the joint.



*Fig.1*

Appx1167, Fig. 1.

7

Screws secure one end of the plate to the metatarsal bone and the other end of the plate to the phalanx bone. An additional screw spans the MTP joint and joins the bones. *Id.*; *see also* Appx1162-1163, ¶¶32-34. To ensure the joint is reduced, the cross-joint screw extends "at an angle…chosen by the surgeon so that this screw, during its screwing, successfully passes through the phalangeal epiphysis P1 and the metatarsal epiphysis M1." *Id.*, ¶32. The trajectory of the screw forms a non-zero angle δ, which is "inclined in relation to the longitudinal direction 11 of the plate body 10…." Appx1161-1162, ¶27. Once fully inserted, the head of the cross-joint screw seats in hole 25, which includes "a concave surface which is substantially complementary to an associated surface delimited by this screw head." *Id.* The angle of hole 25 relative to the plate can be seen in Figure 2, reproduced below.



*Fig.2*

Appx1168, Fig. 2.

8

Arnould's plate further includes two small holes circled in red in Figure 2 above, but does not describe their purpose.  Appellee's expert testified these holes are "temporary guide holes that are used to temporarily secure the plate during the implantation process."  Appx3756-3757, ¶251; *see also* Appx847, ¶240 (describing these holes as compatible with "k-wires to temporarily hold the plate in place while the screws are inserted").

### 2.  Zahiri

Zahiri similarly describes a bone plate used to fuse a bone fracture with a screw that crosses the fracture line at an angle in the range of 90° to 170°.  Appx1180, 4:58-67, 3:59-67.  This plate and screw configuration used to fuse a bone is depicted in Figure 1.



Appx1174, Fig. 1.  The Zahiri plate further comprises pins designed to temporarily lock the plate to the bone before the plate is fully installed.  Appx1180-1181, 3:11-

18, 5:47-64.  The temporary locking design for the pins allows a surgeon to place the plate properly.  *Id.*

### 3. Myerson '608

Like Arnould, Myerson '608 discloses a bone plate for MTP fusion. Appx1187, Abstract; Appx1190, ¶2; Appx1188, Fig. 1.  The bone plate is contoured to follow the anatomy of bones adjacent to the joint to be fixed.  Appx1190, ¶10.  In Myerson '608, at least some of the "screw holes are designed to receive locking screws" by incorporating locking threads to engage with the locking screws. Appx1191, ¶22.

### 4. Myerson '592

Myerson '592 likewise discloses a bone plate configured for joint fusion in the foot.  Appx4018, Fig. 1; Appx4021, ¶¶5, 10.  The plate is contoured to follow the anatomy of the mid-foot bones and especially across the metatarsal joints. Appx4022, ¶¶21-22.  The location of the bone plate on the foot is depicted in Figure 1, reproduced below.



**Fig. 1**

Appx3681-3682, ¶68 (including Appx4018, Fig. 1 (annotated)).

## II. PROCEDURAL BACKGROUND

Appellee filed two petitions against the Challenged Patents, which included similar grounds all rooted in obviousness, with either WIPO Pat. Pub. No. WO 2007/131287A1 to Slater ("Slater") or Arnould as the primary reference. The Board issued detailed decisions in both proceedings addressing the parties' arguments with respect to the Arnould-based grounds, weighing the testimony presented from both parties' experts, and concluding the Challenged Claims were obvious.[3]

---

[3] Because the Board did not reach any of the Slater-based grounds below, they are not addressed in this appeal. To the extent the Court reverses the Board's decisions with respect to the Arnould-based grounds, remand for consideration of the Slater-based grounds is appropriate.

With respect to the limitations Appellant challenges on appeal of claims 32, 33, and 36-39 of the '713 Patent; and claims 1-3 and 7-18 of the '751 Patent, Appellee argued below these limitations were present in the disclosure of Arnould alone to a POSITA, and the Board agreed.  Appx20 ('713 Patent, cl. 32); Appx26-27 ('713 Patent, cl. 33); Appx33 ('713 Patent, cl. 36); Appx35 ('713 Patent, cl. 37); Appx39 ('713 Patent, cl. 38); Appx40-41 ('713 Patent, cl. 39); Appx77 ('751 Patent, cl. 1); Appx87, Appx91 ('751 Patent, cl. 11); Appx93, Appx95 ('751 Patent, cl. 17); Appx95 ('751 Patent, cls. 2, 3, 7–10, 12–16, and 18); *see also* Appx468 ("Arnould's third hole identified in the Petition meets this requirement without turning to the disclosure of Zahiri"); Appx470 ("Arnould itself discloses pin holes."); Appx3505 (including both quotes in relation to the '751 Patent).

The Board additionally considered Appellee's alternative ground of Arnould and Zahiri, and again found each limitation met.  Appx20-26; Appx26-27; Appx37-41; Appx77-86; Appx87-92; Appx94-95.  In reaching this conclusion, the Board rejected Appellant's contention that Zahiri was not analogous art because neither of the Challenged Patents "'define' the term 'bone plate' nor otherwise suggest that the patentee acted as its own lexicographer."  Appx10; Appx59.  Further, contrary to Appellant's assertion, "nothing in the record suggests that the ordinary meaning of 'bone plate' requires the plate to be fixed between two bone parts."  Appx10; Appx59.  Even if Zahiri was not a "bone plate" as Appellant construed the term, the

12

Board concluded Zahiri was still analogous art "because it is in the same field of endeavor, i.e., orthopedic implants, as the '713 Patent." Appx10; *see also* Appx59 (same for '751 Patent).

After reaching the conclusion that Zahiri was analogous art, the Board found ample motivation to combine the bone plates of Arnould and Zahiri. Appx20-22, Appx26; Appx79-80, Appx85-86. These motivations include incorporating the Zahiri plate, which "allows a sufficient amount of force to be applied between bone parts while dissipating the force so that it does not damage the bone parts." Appx21; Appx80. In a similar vein, the Board found "that it would have been obvious to incorporate Zahiri's temporary fixation pins for use with Arnould's plate especially in light of Arnould's depiction in Figure 2 of temporary guide holes that may be used to temporarily secure the plate." Appx90-91; Appx40 ("Given that Arnould's plate already has pin holes that Mr. Sherman testifies are intended for use with k-wires, we agree with and credit Mr. Sherman's testimony that a POSITA would have been motivated to incorporate the temporary fixation pins expressly taught in Zahiri to ensure correct placement of Arnould's plate.").

After review of the record, the Board concluded Appellee "articulated reasoning with rationale underpinning demonstrating that a POSITA would have been motivated to make [the combination of Arnould and Zahiri] with a reasonable expectation of success." Appx22; Appx85-86. On these issues, the Board noted it

found the testimony of "[Appellee's expert] to be more credible [than] the competing testimony Patent Owner cites from [Appellant's experts]." Appx41 (internal citations omitted); Appx92 (same); *see also* Appx23; Appx82.

Turning to the remaining two claims challenged in the '713 Patent proceeding (claims 34 and 35), which recite the use of locking screws and threaded holes, the Board agreed that the additional teachings of Myerson '608 rendered these claims obvious in view of Arnould alone or Arnould and Zahiri. Appx44. Preliminarily, as argued in the Petition, the Board agreed that Myerson '608 describes a bone plate for MTP fusion just like Arnould. Appx42. Moreover, the Board agreed with Appellee that the use of locking screws with locking threaded holes was a known technique to prevent screws from backing out. *Id.* Consistent with its overall views regarding Appellee's expert, the Board again found his testimony in this regard to be "credible and persuasive." Appx43.

Finally, with respect to the last challenged claim of the '751 Patent—claim 6, which requires the claimed bone plate to be configured for use across the tarsometatarsal ("TMT") joint—the Board credited Appellee's expert's testimony that the bone plate of Arnould that is depicted over the MTP joint could be easily reconfigured for use over the TMT joint in light of the teachings of Myerson '592. Appx97. While Appellant challenged each reference in the combination independently, Appellant failed to address "'what the combined teachings of the

14

references would have suggested to a person of ordinary skill in the art.'" Appx98 (quoting *In re Mouttet*, 686 F.3d 1322, 1333 (Fed. Cir. 2012)). As a result, the Board determined that Appellee's challenge to claim 6 sufficiently demonstrated the claim was obvious. Appx97-98.

## SUMMARY OF THE ARGUMENT

The Board correctly understood the Third Hole Limitations as encompassing the preferred embodiment of the Challenged Patents (Section II.B) and Appellant's attempt to have this Court construe the term for the first time on appeal is improper. (Section II.A).

Without accepting Appellant's new claim construction argument on appeal, the Board correctly concluded the Third Hole Limitations are taught to a POSITA in view of Arnould alone, which Appellant does not appear to dispute. (Section III.A). Even under Appellant's forfeited claim construction of the Third Hole Limitations, Appellant does not dispute the combination of Arnould and Zahiri teaches the claim. (Section III.B).

Similarly, Appellant does not appear to dispute that Arnould alone teaches temporary fixation as required in the Challenged Claims as the Board concluded. The Board's decision that Arnould alone or Arnould in view of Zahiri teaches the temporary fixation limitations to a POSITA should be affirmed. (Section IV).

The Board also properly concluded a POSITA would have been motivated to

combine the teachings of Arnould and Zahiri and would have had a reasonable expectation of success in the resulting combination.  (Section V).

The Board's decision that the addition of the teachings of Myerson '608 to Arnould alone or Arnould in view of Zahiri teaches the threaded hole and locking screw requirements of claims 34 and 35 of the '713 Patent to a POSITA is fully supported, particularly in light of Appellant's failure to address the combination as a whole and Appellant's admission in a related proceeding that modifying the plate of Arnould as detailed in the Petition was readily known.  (Section VI).

Next, the Board's decision to reject Appellant's unclear and vague construction of the term "between" to mean "at, into, or across the space separating two objects, places, or points" is fully consistent with the intrinsic evidence. (Section VII.A).  Moreover, under any construction of the term "between," the Board's conclusion that the teachings of Arnould or Arnould in view of Zahiri disclose a third hole "between" to a POSITA is appropriate.  (Section VII.B).

The combination of Arnould, Zahiri, and Myerson '592 teaches the requirements of claim 6 of the '751 Patent, which Appellant does not seem to substantively dispute.  (Section VIII).  The Board's typographical error referring to Myerson '608 does not undermine these conclusions.

Finally, the Board's decision to institute on the '751 Patent is a non-appealable decision (Section IX.A) that nevertheless was not an abuse of discretion because

both the Board and Appellant understood the metes and bounds of the arguments raised in the Petition and Appellant has an opportunity to respond to each argument below. (Section IX.B).

The Board's decisions should be affirmed in full.

## **ARGUMENT**

## I.    STANDARD OF REVIEW

This Court "review[s] the Board's factual determinations for substantial evidence and its legal determinations *de novo*." *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1136 (Fed. Cir. 2019). The Board's ultimate claim construction is reviewed de novo, with any subsidiary findings involving extrinsic evidence reviewed for substantial evidence. *AC Techs. S.A. v. Amazon.com, Inc.*, 912 F.3d 1358, 1365 (Fed. Cir. 2019). The Board's conclusion of obviousness is reviewed de novo, with underlying factual findings reviewed for substantial evidence. *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 833 (Fed. Cir. 2015). "Whether a skilled artisan would have been motivated to combine references or would have had a reasonable expectation of success in combining references are questions of fact reviewed for substantial evidence." *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, 81 F.4th 1368, 1374 (Fed. Cir. 2023).

## II.   THE BOARD CORRECTLY UNDERSTOOD THE "THIRD HOLE LIMITATIONS" <span style="color:red">(Both Proceedings)</span>

Appellant first contends the Board fundamentally erred "in construing the 'angled hole' limitations, thus infecting its obviousness analysis as to every challenged claim."[4]  ECF No. 22 at 2.  Appellant did not ask the Board to construe this claim element below, and its attempt to do so for the first time on appeal should be rejected as forfeited.  Even if Appellant's untimely claim construction arguments are considered, its proposal violates fundamental canons of claim construction and is thus improper.

### A.    Appellant Forfeited Its Claim Construction Arguments

Appellant improperly seeks review of its forfeited claim construction dispute despite failing to ask the Board to construe the Third Hole Limitations.  Appellant concedes, "[n]either party formally requested construction of any part of element [32f]." ECF No. 22 at 22; *see also id.* at 56.  Appellant cannot hold back an argument regarding its view of the proper scope of the claim term below, particularly where it seeks to exclude the preferred embodiment, only to ask for de novo review on appeal. *See Finjan, Inc. v. Cisco Sys.*, 837 F. App'x 799, 811 n.11 (Fed. Cir. 2020) ("Finjan

---

[4]   While Appellant claims this argument broadly applies to "every challenged claim," the Third Hole Limitations do not appear in claims 11-16 of the '751 Patent.  *See, e.g.*, ECF No. 22 at 56 (arguing about angled hole only as to independent claims 1 and 17 of the '751 Patent).

did not, however, raise this [claim construction] argument before the PTAB.  It is

therefore waived." (internal citation omitted)); *see also CCS Fitness, Inc. v.*

*Brunswick Corp.*, 288 F.3d 1359, 1370-71 (Fed. Cir. 2002).

Highlighting that its argument is new on appeal, Appellant cites to various file

histories of related patents that it failed to put into evidence below in support of its

positions.[5]  ECF No. 22 at 24-25 (citing Appx4948-4950, Appx4971, Appx4774-

4775).  This Court has repeatedly held, however, that "a party may not introduce

new claim construction arguments on appeal or alter the scope of the claim

construction positions it took below.  Moreover, litigants waive their right to present

new claim construction disputes if they are raised for the first time after trial."

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006).

Presenting wholly new evidence is a telltale sign that Appellant has "alter[ed] the

scope of the claim construction positions it took below."  *Id.*  As such, this Court

need not reach Appellant's Third Hole Limitation arguments.

### B.    Appellant's New Appeal Arguments Violate Fundamental Tenets Of Claim Construction Law

Even if this Court wades into Appellant's claim construction dispute,

Appellant's construction cannot be accepted because it reads out the preferred

---

[5]  Confirming this evidence was not of record in the proceedings below, Stryker asks this Court to take judicial notice of the evidence.  ECF No. 22 at 25 n.5.

embodiment of the Challenged Patents absent any basis in the intrinsic record to do so.  Appellant also wrongly ignores portions of the claims, and asks this Court to rewrite the claims inconsistent with the intrinsic record.

### 1.    Appellant's Construction Improperly Reads Out The Preferred Embodiment

Appellant, for the first time on appeal, contends the plain language of Third Hole Limitations narrowly covers only a hole bored at an angle within the main body of the bone plate—an embodiment Appellant coins the "angled hole" embodiment. ECF No. 22 at 23 (citing Appx108, 1:37-46), 25, 56.  Specifically, Appellant asks this Court to exclude from the plain meaning any embodiment described in the Challenged Patents that includes an angled hole on a tab of the plate that extends downward from the main body of the bone plate (i.e., the only embodiment depicted in the figures of the patents).

The intrinsic evidence does not support departing from this Court's general rule that "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *On-Line Techs.*, 386 F.3d at 1138.  Rather, the language of the claims is broad enough to encompass any hole (on a plate formation such as a tab or otherwise) angled relative to a longitudinal axis of the plate through a thickness of the plate.  For example, the four figures in the Challenged Patents—all of which depict the same tab embodiment—each show a tab that angles downward from the main body of the plate that includes a hole.

Appx106-107. Because the tab is angled relative to a longitudinal axis of the plate, the hole on the tab is angled relative to a longitudinal axis of the plate. Moreover, the hole on the angled tab of the plate extends through a thickness of the plate because, as the specification details, "[t]he angled tab results from a cut out and a deformation *of a portion of the plate*." Appx108, 1:42-44.

Where, as here, "claims can be reasonably interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence to the contrary." *Oatey*, 514 F.3d at 1277; *see also MBO Lab'ys*, 474 F.3d at 1333 (rejecting claim construction that would exclude embodiments illustrated in the drawings); *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1353-55 (Fed. Cir. 2006) (rejecting claim construction that "excluded embodiments disclosed in the specification" including embodiments in the drawings); *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1320, 1322 (Fed. Cir. 2004). As this Court has explained, adopting a construction that excludes the preferred embodiment "would require highly persuasive evidentiary support"—support that does not exist in this case. *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013).

To justify departing from years of precedent, Appellant argues the Challenged Patents "intentionally recite[] an 'angled hole.'" ECF No. 22 at 25, 56. But none of the claims recite "an angled hole." Thus, even if the specification "repeatedly and

consistently" characterizes an "angled hole" as different than an angled tab with a hole, the inventors chose not to use that language in the claims. If anything, the inventors' decision not to use "angled hole" in the claims further undermines Appellant's attempt to exclude the preferred embodiment in its construction. For this reason, Appellant's citation to *Barrday*—implying the patents "repeatedly and consistently characterize[] a claim term in a particular way"—is wholly inapposite. ECF No. 22 at 25 (citing *Barrday, Inc. v. Lincoln Fabrics Inc.*, No. 2022-1903, 2023 WL 7871688, at *4 (Fed. Cir. Nov. 16, 2023)).

Appellant's reliance on the prosecution history of the parent application to the Challenged Patents does nothing to support its construction. ECF No. 22 at 24-25. Preliminarily, this evidence was never presented to the Board. Moreover, Appellant's reliance on the claims and restriction requirement in the parent application has no relevance to the appropriate construction here because the language is not the same as the claims at issue in this case. Nevertheless, the evidence undermines Appellant's proposed construction and confirms that the claims in this case broadly encompass both an angled hole bored into the body of the plate and an angled hole on a tab. Specifically, before receiving a restriction requirement from the Patent Office, the applicant broadly claimed in claim 1, "a formation set at an angle with respect to a longitudinal axis of the plate, the formation including a third hole…" Appx4919. Claim 9 depended from claim 1 and recited

"the formation is a tab unitarily formed with the bone plate…" Appx4920. In other words, the parent application prosecution history confirms the hole on the angled tab is a *subset* of the angled hole. Appellant notably elected the narrower dependent claim 9 (tab), yet now seeks a construction that would exclude a tab from the broader independent claim 1 (angled hole). Appx4971. Appellant's new prosecution history argument also cannot be squared with the fact that it admits the '713 Patent includes claims that specifically recite the "angled tab" embodiment, which undermines any assertion it was filed to only pursue the allegedly previously unelected "angled hole" embodiment. *See, e.g.*, ECF No. 22 at 24 ("other claims [of the '713 Patent] are clearly directed to an angled tab (or 'extension')").

The Third Hole Limitations are not limited to the "angled hole" embodiment and should not be construed in a way that excludes the "advantageous" angled tab embodiment. *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024). Appellant's attempt to construe the Third Hole Limitations to exclude the preferred angled tab embodiment fails, and, with it, the majority of Appellant's arguments on appeal similarly fail.

> **2.    Appellant Confusingly Lumps Together The Third Hole Limitations, But Focuses Its Analysis On Language Unique To The '713 Patent**

The Third Hole Limitations each require that the hole is angled relative to the plate with some variations in language. Appx110, 5:16-18 ("third hole being angled

relative to a longitudinal axis of the plate through a thickness of the plate") ('713 Patent, cl. 32); *see also* Appx117, 3:20-21 ("third hole is angled relative to the longitudinal axis of said bone plate") ('751 Patent, cl. 1), 4:56-57 ("third hole being angled relative to said bone plate") ('751 Patent, cl. 17).  Despite the differences in language, Appellant contends each of these terms should be construed similarly to exclude the preferred embodiment.  Looking at the specific language in claim 17 of the '751 Patent illustrates the impropriety of such a limited construction.  That claim does not require the hole to be through a thickness of the plate or even that the hole is angled relative to a longitudinal axis of the plate.  Instead claim 17 of the '751 Patent broadly claims a third hole angled "relative to said bone plate."  Appx117, 4:56-57.  A construction that would restrict this broad term to exclude a hole on an angled tab of the plate lacks any modicum of support in the plain language of the claims.

Moreover, with respect to the remaining two Third Hole Limitation terms, Appellant repeatedly ignores that the angle of the hole is relative to a longitudinal axis of the bone plate.  ECF No. 22 at 23, 27; Appx416 (arguing Arnould fails to teach claim element [32f] because "screw hole 25 is not angled 'through a thickness of the plate'").  Appellant confirms its desire to rewrite the claim by omitting this portion of the claim in its argument: "Under a proper construction of claim element [32f] ('third hole being angled…through a thickness of the plate'), the Board's

24

obviousness finding….”  ECF No. 22 at 21 (ellipses in original).  The claims do not recite a "third hole angled through a thickness of the plate."  Appellant's argument that voids the description of the angle of the third hole as "angled relative to the longitudinal axis of the plate" is a legally improper read of the claim.  *See Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006); Appx110, 5:16-18.

Regardless, Appellant does not dispute, nor can it dispute, that the holes on both the angled tab and angled hole embodiments are "angled relative to a longitudinal axis of the plate" and are holes "through a thickness of the plate."



Appx106, Fig. 2 (annotated).  As depicted in annotated Figure 2 from the Challenged Patents (above), hole 1a1 is angled relative to the axis of the plate because its axis is

angled relative to the axis of the plate. Put differently, where the axis of the hole is angled relative to the bone plate, the hole itself is equally angled relative to the axis of the plate. Appellant's argument to the contrary violates sound mathematical principles, confirming the construction now proposed by Appellant is untenable.

### 3. Appellant Erroneously Rewrites The Claim Absent Any Intrinsic Support

Appellant's construction also improperly seeks to re-write claim 32 of the '713 Patent such that "a thickness" means only the main body of the plate. The '713 Patent specifies, "[t]he invention relates to a plate fixed between two bone parts by way of screws engaged in holes formed in the thickness of said plate." Appx103, Abstract. This is the only reference to the "thickness" of the plate in the specification. Appellant's proposed construction requiring "a thickness," as recited in claim 32, to mean the main body of the plate, conflicts with this sole use of the term because the screw that crosses between bones fixes the bone plate "between two bone parts by way of screws engaged in holes formed in the thickness of said plate." Appx103, Abstract.



**Fig. 3**

Appx107, Fig. 3. Excluding this embodiment because the thickness of the tab is not "a thickness of the plate" is unsupported by the language of the claim and improper. *See Phillips*, 415 F.3d at 1312; *see also Oatey*, 514 F.3d at 1276. The Board correctly ascertained the true meaning of claim 32 by interpreting the claim language in light of the specification, that makes no distinction between a thickness of the plate body and a thickness of an angled tab *of the plate*. *Id.*

Appellant's argument in footnote 4 that "[t]he Board's construction renders superfluous the language 'through a thickness of the bone *plate*'" wrongly assumes that the angled tab is not part of the bone plate. ECF No. 22 at 22 n.4 (emphasis in original). As depicted in every figure, the tab angled downward in the '713 Patent is part of the bone plate and has a thickness. Appellant's argument also contradicts the limited disclosure of the '713 Patent, which explains, "[t]he angled tab results from a cut out and a deformation *of a portion of the plate*." Appx108, 1:42-44. In

other words, the hole through the tab is through a thickness of the plate because the tab itself is a portion of the plate. *Id.*

Accordingly, the Board's invalidity findings should be affirmed.

## III. ARNOULD ALONE OR ARNOULD IN COMBINATION WITH ZAHIRI TEACH THE THIRD HOLE LIMITATIONS <span style="color:red">(Both Proceedings)</span>

### A. Arnould Alone Renders Obvious The Third Hole Limitations

As to claims 32, 33, 36-39 of the '713 Patent; and claims 1-3, 7-10, 17 and 18 of the '751 Patent, Appellant contends on appeal that Arnould alone does not render these claims obvious based on its improper construction. *See, e.g.*, ECF No. 22 at 26-30, 56. Even if the merits are examined, however, the Board's decision should be affirmed because Arnould alone discloses the Third Hole Limitations. For example, Appellee illustrated the angle of the hole relative to the longitudinal axis of Arnould's plate in its Petition:



Appx203.  Appellee similarly illustrated how the third hole of Arnould is angled "through a thickness of the plate" as required by claim 32 of the '713 Patent:



Appx204.  After considering the same arguments Appellant raises on appeal, the Board concluded that the Third Hole Limitations are "unequivocally shown in

29

Arnould's figures. Figure 2 of Arnould shows that hole 25 is disposed at an angle to the longitudinal axis 11 of the plate." Appx18-19; Appx76.

Appellant readily admits "hole 25 is located at the end of leg 20, which itself extends at an angle β from one longitudinal side of the plate body," so its assertion that the hole is not angled relative to the longitudinal axis of the Arnould plate lacks merit. ECF No. 22 at 26 (citing Appx1160-1161, ¶¶23-24). Just as the hole on the angled tab in the figures of the Challenged Patents is angled relative to a longitudinal axis of the plate, the hole at the end of the leg of Arnould is similarly angled relative to the longitudinal axis of the plate.

Appellant further fails to refute that Arnould's hole 25 is "the third hole…through a thickness of the plate," instead focusing on whether the third hole is "angled" through a thickness of the plate. *See, e.g.*, ECF No. 22 at 27. As discussed above, claim 32 actually recites the "third hole being ***angled relative to a longitudinal axis of the plate*** through a thickness of the plate." Appx110, 5:16-18 (emphasis added). That Appellant makes identical arguments regarding the Third Hole Limitations of the '751 Patent, which contain no requirement regarding "through a thickness of the plate" undermines its position on appeal that the requirement has some unique meaning that cannot be found in the teaching of Arnould. ECF No. 22 at 56. Arnould's hole 25, therefore, renders obvious the Third Hole Limitations to a POSITA without reference to the complimentary teachings of

Zahiri. Appx110, 5:16-18 ('713 Patent, cl. 32); Appx117, 3:20-21 ('751 Patent, cl. 1), 4:56-57 ('751 Patent, cl. 17).

Appellant contends Appellee did not present an Arnould-only obviousness theory below with respect to the Third Hole Limitation of claim 32 of the '713 Patent. ECF No. 22 at 37 ("Rather than address Stryker's argument and evidence, OsteoMed's reply argues instead (for the first time) that Arnould's third hole alone meets element [32f]…"). This theory was articulated in the Petition at the outset of the case. Appx203-204. After presenting the annotated Arnould figures shown above and citing to the corresponding evidence from Appellee's expert, the Petition unequivocally states: "Thus, a POSITA would find this element disclosed by Arnould." Appx204.

Additionally, contrary to Appellant's claims (ECF No. 22 at 29), the Board did not rely on an argument not advanced by Appellee regarding the concave nature of hole 25. In the Petition, Appellee pointed out that "Arnould describes a screw hole 25 (third hole) configured such that the screw 30 forms a non-zero angle in relation to the longitudinal axis of the plate body." Appx203. To enable this non-zero angle, "hole 25 comprises a concave surface that is substantially complementary with head 32 of screw 30." Appx201 (citing Appx1161-1162, ¶27). The concave surface of the hole allows "the longitudinal axis 31 of this screw [to] be inclined in relation to the longitudinal direction 11 of the plate body 10…."

31

Appx1161-1162, ¶27; Appx203.  "Thus, the trajectory of the third fixation member, and therefore the third hole, is angled relative to the longitudinal axis of the plate." Appx203.  This was not an instance where Appellant "had no opportunity to respond to this argument," as the argument can be ascertained from the very first paper filed.

Arnould alone renders the Third Hole Limitations obvious as the Board found, thus mooting Appellant's arguments regarding the combination of Arnould and Zahiri.  Even still, as discussed below, the Board's decision regarding the combinability of Arnould and Zahiri is fully supported.

## B.    Arnould In View Of Zahiri Renders Obvious The Third Hole Limitations

Regarding the combination of Arnould and Zahiri, Appellant does not refute that *any* claim limitation is missing from the combination (*see, e.g.*, ECF No. 22 at 31 ("There is no dispute that Zahiri discloses a guide plate with an angled hole.")), but instead argues the combination is supported by just "one sentence," thus insinuating that there is insufficient evidence to affirm the Board's decision.  *Id.* at 30.   Appellant's protestations regarding the length of Appellee's rationale to combine Arnould and Zahiri are both factually inaccurate and irrelevant.  Appellee dedicates pages of its Petition detailing the reasons to modify Arnould in view of the teachings of Zahiri.  *See, e.g.*, Appx191-196.  For the reasons described in Section V below, substantial evidence supports the Board's finding of a motivation to combine Arnould and Zahiri with a reasonable expectation of success.  The Board's

final written decision finding claims 32, 33, 36-39 of the '713 Patent; and claims 1-3 and 7-10, 17 and 18 of the '751 Patent unpatentable should be affirmed. *See Elekta*, 81 F.4th 1378; *Transtex Inc. v. Vidal*, No. 2020-1140, 2023 WL 1487425, at *6 (Fed. Cir. Feb. 3, 2023); *Tehrani v. Hamilton Techs. LLC*, No. 2022-1732, 2023 WL 4231628, at *4 (Fed. Cir. June 28, 2023), *cert. denied*, No. 23-575, 2024 WL 674746 (U.S. Feb. 20, 2024).

## IV. ARNOULD ALONE OR ARNOULD IN COMBINATION WITH ZAHIRI TEACH TEMPORARY FIXATION (Both Proceedings)

Appellant next contends Arnould and Arnould in view of Zahiri fail to teach "temporary fixation pins" ('713 Patent, cl. 38); "a temporary fixation member configured to be inserted through the fifth hole" ('751 Patent, cl. 11); and "a pin hole…configured to accept a temporary fixation member" ('751 Patent, cl. 17) (collectively, the "Temporary Fixation Limitations").[6]  ECF No. 22 at 44, 63-68. Appellant's arguments regarding the Temporary Fixation Limitations focus on whether it would be appropriate to incorporate the undisputed temporary fixation mechanism from Zahiri into Arnould.  ECF No. 22 at 63-68.  This entire argument ignores that Appellee put forth undisputed evidence that Arnould alone disclosed the

---

[6]  These same concepts are claimed in claims 9 and 10 of the '751 Patent, but Appellant inexplicably does not challenge the Board's decision as to those claims.  Appx117, 3:55-60.

Temporary Fixation Limitations. For example, the Petition for the '713 Patent explains with annotated figures of Arnould:

> While Arnould does not explicitly describe the use of k-wires to temporarily hold the plate in place while the screws are inserted, the figures show pin holes that are intended to be used to temporarily secure the plate with k-wires during the implantation process…K-wires are commonly used for temporary placement, alignment and immobilization of bone plates so that the surgeon can correctly position and align a plate.

Appx193-194 (internal citations omitted). As a result, Appellee contended that "a POSITA would find this claim obvious in view of Arnould." Appx216-217 (internal citations omitted). In similar fashion, Appellee's Petition directed to the '751 Patent relies on the same disclosure in Arnould, articulating "A POSITA would understand that Figure 2 of Arnould illustrates temporary guide holes (circled in red below) that are used to temporarily secure the plate during the implantation process." Appx3190 (internal citations omitted).

Appellee's expert supported these assertions, opining "(1) k-wires were 'commonly used for temporary placement and immobilization of bone plates so that the surgeon can correctly position and align a plate'; and (2) a POSITA would have understood Arnould's figures to 'show pin holes that are intended to be used to temporarily secure the plate with k-wires during the implantation process.'" Appx39 (quoting Appx820-821, ¶194; Appx842, ¶240); *see also* Appx91; Appx216-217; Appx3190-3191. Importantly, as the Board concluded, Appellant provided no

support to establish Appellee's expert was wrong regarding Arnould's pin holes. Appx39 ("Neither of Patent Owner's declarants dispute this testimony."); Appx91. In the '751 Patent proceeding, the Board similarly found Arnould depicts "temporary guide holes that may be used to temporarily secure the plate." Appx90-91. "If it were true, as [Appellant] asserts, that there is no need for temporary fixation pins given the configuration of Arnould's plate, then there would be no reason for those pin holes. Yet, those holes are clearly depicted in Arnould's figures, and [Appellant] offers no alternative explanation for their purpose." Appx91.

When asked about these holes at his deposition, Appellant's expert testified that he does not know what these holes are. Appx1510-11, 79:3-80:19. Appellee's expert, on the other hand, explained that the small holes in Arnould's plate were for use with k-wires, which are temporary fixation members. Appx820-821, ¶194; Appx842, ¶240; Appx3756-59, ¶¶251-255. As a result, the Board properly weighed the expert testimony and found Appellee's expert "more credible." Appx41 (internal citations omitted); Appx92. This mirrors this Court's recent holding in *Rembrandt Diagnostics, LP v. Alere, Inc.*, where "[Appellant], as the Board explained, 'cites to no counter testimony from a qualified declarant to refute [Appellee's expert's] conclusions regarding how [a skilled artisan] would have interpreted the identified disclosures.'" 76 F.4th 1376, 1386 (Fed. Cir. 2023). Because Arnould alone

discloses the Temporary Fixation Limitations, and Appellant does not challenge that finding on appeal, the Board's decisions should be affirmed.

Nevertheless, the Board's conclusion that there was ample rationale to look to the disclosure of Zahiri's temporary fixation mechanisms was appropriate. Perhaps the most persuasive evidence of this is the fact that Arnould itself discloses temporary fixation holes "that may be used to temporarily secure the plate." Appx40 ('713 Patent); *see also* Appx91 ('751 Patent). As the Board explained,

> Given that Arnould's plate already has pin holes that Mr. Sherman testifies are intended for use with k-wires, we agree with and credit Mr. Sherman's testimony that a POSITA would have been motivated to incorporate the temporary fixation pins expressly taught in Zahiri to ensure correct placement of Arnould's plate.

Appx40 ('713 Patent) (internal citations omitted); *see also* Appx90-91 ('751 Patent). Moreover, as argued in the Petitions, Arnould discusses the difficulty of proper plate alignment faced by the surgeon during implantation and the importance that proper placement has on patients' comfort. *See, e.g.*, Appx194 (citing Appx1155, ¶3). That Arnould itself depicts guide pin holes on the plate would direct a POSITA to look to incorporate the use of temporary pins, undisputedly disclosed by Zahiri, into Arnould, to ensure correct placement.

On appeal, Appellant contends, as it did below, that "Arnould's disclosure renders unnecessary Zahiri's 'known technique for improving plate alignment during implantation.'" ECF No. 22 at 64. But this argument again ignores that

Arnould's figures show pin holes in the plate and Appellant offers no reason (on appeal or below) for the purpose of these holes to contradict the credited testimony of Appellee's expert.    *See* Appx40; Appx91.    Moreover, while Appellant contends Arnould's disclosure of oblong hole 16 that can be used to "partially immobilize the plate body" (ECF No. 22 at 64), this does not obviate the motivation to use k-wires or incorporate Zahiri's temporary fixation pins to further immobilize the plate to ensure correct alignment, as the Board concluded. Appx40-41 ('713 Patent); Appx91-92 ('751 Patent).    In reaching this conclusion, the Board considered testimony from Appellee's expert and Appellant's two experts and again found Appellee's expert more credible.    Appx41; Appx92.

Appellant next contends that incorporating the temporary fixation mechanism detailed in Zahiri into the plate of Arnould would render it inoperable for its intended purpose.    As a preliminary matter, Appellant does not appear to have advanced this "inoperability" argument before the Board.    Regardless, Appellant's argument falls flat in light of Arnould's disclosure of temporary fixation pin holes and Appellant's failure to offer any alternative rationale for these holes in the plate of Arnould, and

failure to dispute Appellee's credible expert testimony that these pin holes would be used for temporary immobilization with k-wires.[7]  Appx39; Appx91.

The Court should not disturb the well-reasoned and evidence-supported findings of the Board, and should affirm the Board's holding that Arnould alone and Arnould in view of Zahiri discloses the Temporary Fixation Limitations.  *Merck*, 808 F.3d at 837.

## V.  THE BOARD CORRECTLY DETERMINED THAT A POSITA WOULD HAVE BEEN MOTIVATED TO COMBINE ARNOULD AND ZAHIRI <span style="color:red">(Both Proceedings)</span>

In determining a POSITA would have been motivated to modify Arnould in light of the teachings of Zahiri, the Board considered all the parties' arguments and expert testimony regarding the motivation to combine Arnould and Zahiri.  Appx20-26, Appx37-41; Appx77-86, Appx88-92.  Appellant's arguments on appeal ignore the contrary evidence on which the Board properly relied and improperly asks this Court to reweigh evidence.

---

[7]  Appellant repeatedly touts the overwhelming expertise of its "renowned" orthopedic surgeon expert who has used foot plates for decades, yet concedes he did not know what the pin holes depicted in Arnould could be used for or why they would be shown on the plate if they served no purpose.  ECF No. 22 at 65 n.12 (citing Appx1510-1511 (79:15-80:19)).

### A.   The Board Considered The Propriety Of Combining The Teachings Of Arnould And Zahiri In Detail And Correctly Determined Substantial Evidence Supported The Combination

On appeal, Appellant ignores the substantial evidence supporting the Board's decisions, incredibly arguing "the Board's *only* basis for combining the disparate references of Arnould and Zahiri stands on the shoulders of a generic, overbroad statement made by [Appellee's] expert, Mr. Sherman, regarding the interchangeability of devices for treating joint fusion and fractures." ECF No. 22 at 2 (emphasis added). Appellant woefully understates the evidence that supports the Board's decision.

Appellee detailed why a POSITA would be motivated to combine the teachings of Zahiri with Arnould's disclosure. Appx191-196; Appx3188-3192. While Appellant cites to a lone paragraph in Appellee's expert declaration, it overlooks the pages of analysis in his declarations that support the combination, including, for example:

- Arnould and Zahiri both "disclose bone plates with diagonal fixation members configured to compress the intersection of a first and second bone or across a fracture" (Appx818, ¶191);

- Arnould and Zahiri are "in analogous fields of invention" because "there are no practical differences between fusing a joint through arthrodesis and fusing a bone fracture" (Appx818, ¶191);

- "[A] POSITA would look to Zahiri when making improvements to Arnould's bone plate" because "[a] POSITA would know that bone plates configured for arthrodesis and bone plates configured to fuse

bone fractures have been used interchangeably for decades" (Appx820, ¶193);

- "Arnould discusses the difficulty of proper plate alignment faced by the surgeon during implantation and the importance that proper placement has on patients' comfort. Zahiri further discusses the importance of plate alignment and specifically discloses the use of temporary locking pins to temporarily secure the bone plate to the bone during implantation" (Appx821, ¶194);

- "Thus, in order to achieve the stated goal from Arnould of locking screw 30 by the head 32, it would have been obvious to a POSITA to use the seated head of the lag screw from Zahiri to ensure the third fixation member is seated in the third hole" (Appx831, ¶216); and

- "[A] POSITA would have readily looked to Zahiri for a way to improve the integrity of the angled fixation screw, which includes putting the screw through a thickness of the plate" (Appx833, ¶221).

In its decisions, the Board adopted Appellee's rationale and explicitly credited the testimony of Appellee's expert. Appx21 (citing Appx201-202, Appx204-205); Appx79-80 (citing Appx3196-3197, Appx3202-3203); *see also* Appx21-22 (citing Appx819-820, ¶193); Appx80 (citing Appx3755-3756, ¶249); Appx39-40; Appx81. This included Appellee's contention that "a POSITA would have been motivated to make this combination because Zahiri teaches that this arrangement 'allows a sufficient amount of force to be applied between bone parts while dissipating the force so that it does not damage the bone parts….'" Appx21-22 (citing Appx192-193; Appx1181, 5:65-6:11); Appx80 (citing Appx3189-3190; Appx1181, 5:65-6:11). As the Board concluded, "Zahiri teaches that this configuration is desirable because it dissipates compression forces, which avoids 'failure by loosening of

the device' and keeps the bone cortex 'healthy and intact.'" Appx22 (internal citation omitted).

While Appellant seems to argue this rationale and testimony is inapplicable because, in its view, Zahiri is not a "bone plate" (*see* ECF No. 22 at 34), Appellant does not appeal the Board's conclusions that Zahiri is a bone plate and is analogous art. Appx8-11, Appx22-23 (citing *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004); Appx108, 1:18-19 ("The invention relates to the technical field of orthopedic implants.")); *see also* Appx58-60, Appx81-82 (citing Appx116, 1:27-28).

After considering all of the evidence, including the testimony of Appellant's two declarants, the Board found the more credible position and evidence to be that of Appellee's, and as a result found the challenged claims unpatentable. This sound opinion should not be disturbed simply because Appellant desires for this Court to re-weigh the evidence and find its experts to be the more credible witnesses.

**B.    Appellant's Arguments Regarding The Combination Of Arnould And Zahiri Fail**

To rebut the Board's decision to combine the teachings of Arnould and Zahiri, Appellant advances three primary arguments: (1) Appellee's expert testimony was "conclusory," (2) the Board ignored Dr. Holmes (Appellant's expert), and (3) alleged differences to the companion cases. ECF No. 22 at 32-37. None of these reasons warrant reversal.

### 1.    Mr. Sherman's Testimony Is Not Conclusory

Appellant first suggests two statements of Mr. Sherman's declaration are conclusory, thus tainting his entire analysis and undercutting any motivation to combine these references.  ECF No. 22 at 32-34.  The two statements refer to the fact that a POSITA would have considered a reference like Zahiri when modifying Arnould because "there are no practical differences between stabilizing a joint for the purposes of arthrodesis [Arnould] and stabilizing two bone parts for the purpose of fusing a bone fracture [Zahiri]" and "that bone plates configured for arthrodesis and bone plates configured to fuse bone fractures have been used interchangeably for decades."  Appx819-820, ¶193; *see also* Appx3755-3756, ¶249.

Tellingly, Appellant does not refer this Court to *any* of the other evidence concerning the motivation to combine Arnould and Zahiri presented in the Petitions and supporting expert declarations detailed above in Section V.A.  *See, e.g.*, Appx21-22 (citing Appx192-193) (crediting argument a POSITA would be motivated to make the combination because Zahiri teaches that this arrangement "allows a sufficient amount of force to be applied between bone parts while dissipating the force so that it does not damage the bone parts"); Appx40 (citing Appx820-823, ¶¶194-196, Appx847-849, ¶¶240-242) (crediting Mr. Sherman's testimony regarding the incorporation of Zahiri's pin holes "[g]iven that Arnould's plate already has pin holes that Mr. Sherman testifies are intended for use with k-

wires"); *see also* Appx80 (citing Appx3189-3190); Appx91-92. For this reason, Appellant's reliance on *TQ Delta, LLC v. Cisco Systems, Inc.*, 942 F.3d 1352 (Fed. Cir. 2019) (ECF No. 22 at 32-33), has no bearing on the facts of this case. Appellant's selective citation of the facts does not undermine that the Board considered the evidence and testimony in the Petition and expert declarations, finding "[Appellee's] arguments and evidence persuasive." Appx22; Appx80-81.

### 2. The Board Considered Dr. Holmes' Testimony, Yet Found Mr. Sherman To Be More Credible

Appellant next complains the Board "ignored" Dr. Holmes' testimony "without explanation." ECF No. 22 at 35. This argument, however, cannot be squared with the Board's decisions, which repeatedly refer to the testimony from Appellant's experts and weigh that testimony against Appellee's expert. *See, e.g.*, Appx10; Appx20, Appx23; Appx24; Appx33; Appx41; Appx39; Appx60; Appx63-64; Appx77; Appx82; Appx92; Appx98. That the Board concluded Appellee's expert offered more credible testimony does not somehow render its consideration of Appellant's experts null and void.

In support of its argument, Appellant cites this Court's decision in *Google Inc. v. Intellectual Ventures II LLC*, 701 F. App'x 946, 953-55 (Fed. Cir. 2017). In *Google*, however, the Board "did not acknowledge any of Google's evidence, let alone explain why it considered such evidence unconvincing." *Id.* at 954. Here, on the other hand, the Board confirmed it did consider Dr. Holmes' testimony yet found

"Mr. Sherman's testimony to be more credible then [sic] the competing testimony [Appellant] cites from…Dr. Holmes." Appx41 (internal citations omitted); Appx92. Thus, unlike the Board in *Google*, the Board in this case not only acknowledged Appellant's evidence, but confirmed it considered the evidence and testimony, including that of Dr. Holmes, in finding the challenged claims unpatentable. *See* Appx5; Appx54.

This Court "review[s] the Board's determinations as to what weight to accord expert testimony for abuse of discretion." *Tehrani*, 2023 WL 4231628 at *2 (citing *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1372 (Fed. Cir. 2020)). Considering both experts agree that at least "some bone plates may be used interchangeably for arthrodesis and for osteosynthesis" (*see, e.g.*, ECF No. 22 at 34), the Board was well within its discretion to find Mr. Sherman's testimony credible and compelling over the competing testimony of Dr. Holmes. The Board's decision should be affirmed. *Tehrani*, 2023 WL 4231628 at *2-3.

### 3. The Substantive Differences Of The Companion Cases Makes Them Irrelevant To This Case

Appellant next attempts to draw in the "companion cases on appeal" to suggest positions taken in different proceedings regarding different prior art references (i.e., Falkner) in the analysis of different claims with different scope using different invalidation theories (i.e., anticipation) are somehow "inconsistent." ECF No. 22 at 36.

The chief distinction between the companion cases and the present case is the use of a blade-plate reference (Falkner) that knifes into the bone unlike any reference here, used in an ***anticipation*** ground, that Appellant had to modify in order to try and capture the claims at issue in that case.  Appx5128-5129; Appx5139.  To anticipate, "the prior art reference…must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'"  *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008) (quoting *Connell v. Sears, Roebuck Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)).  In contrast, to render a claim obvious, the Supreme Court has held "the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

The stark differences between Falkner and the references at issue in this case, and the legal theories present in each case, make clear that the Board was well within its discretion to keep the proceedings separate.  Thus, the Board's decision should remain unchanged.

**4.    The Board Considered Appellant's Remaining Challenges To The Arnould And Zahiri Combination And Properly Rejected Them**

Appellant challenges the Board's finding that "[Appellee's] combination is premised on modifying hole 25 in Arnould's plate to have Zahiri's angled hole configuration.  That combination would retain Arnould's flexible plate, while fixing or at least limiting the angle of screw 30 through the hole."  ECF No. 22 at 37 (quoting Appx24-25).  Appellant further argues the record shows a POSITA would not have been motivated to combine Arnould with Zahiri "because doing so would abolish Arnould's flexible plate."  *Id.*, 39.  Yet, "as detailed in the Petition, a POSITA would be motivated to improve the integrity of hole 25 while still ensuring flexibility of the screw trajectory because of pliable leg 20."  Appx468 (citing Appx201, Appx202); *see also, e.g.*, Appx25; Appx84.  Moreover, as the Board found, based on Appellee's evidence, "a POSITA could compensate for the fixed angle" because Zahiri discloses providing plates with a variety of angles in a kit so that a surgeon can maximize fixation based on the particular needs of a patient.  Appx25; Appx83.

Appellant then argues incorporating Zahiri's hole would simply "achieve redundant purposes."  ECF No. 22 at 40.  If anything, that the teachings of both references are used to achieve similar purposes simply confirms the Board's conclusions that a POSITA would have been motivated to combine them.  Moreover,

that both plates use a screw that crosses two bones or two bone parts does not reduce the incentive to improve Arnould's implementation of that function with the teachings of Zahiri. Zahiri importantly expands on the teachings of Arnould, providing an improved integrity to the seating of the screw head. Thus, Zahiri's hole is not merely redundant to Arnould's. Appx202 (citing Appx1182, 7:31-38); *see also* Appx22 ("Zahiri teaches that this configuration is desirable because it dissipates compression forces, which avoids 'failure by loosening of the device' and keeps the bone cortex 'healthy and intact.'") (quoting Appx1181, 5:65–6:7); Appx3178-3179; Appx80-81 (same).

Moreover, pointing to this Court's recent holding, the Board explained, "a skilled artisan may be motivated to combine particular features of different references, *e.g.*, to secure some benefits at the expense of others, even when bodily incorporation would be impossible or inadvisable." Appx25-26 (quoting *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950, 957 (Fed. Cir. 2023)). The Board found this instruction pertinent to this case, "where [Appellee] is proposing a relatively minor change to Arnould's plate, i.e., modifying the existing hole 25 in Arnould's plate to incorporate Zahiri's angled hole configuration." Appx26; Appx85. The Board further found "[t]here is no indication this configuration would not work if adapted to and sized for the dimensions of Arnould's plate and the anatomy of the metatarsal-phalangeal joint through the exercise of a POSITA's ordinary creativity." Appx26;

Appx85. The Board again credited Mr. Sherman's testimony demonstrating that plates for fusing fractures and joints were known to be interchangeable. Appx26 (citing Appx819-820, ¶193); Appx85 (citing Appx3719, ¶134).

Appellant next challenges the reasonable expectation of success in making the Arnould-Zahiri combination. ECF No. 22 at 40-43. Substantial evidence supports the Board's finding that bone plates for joint fusion and bone fusion have been used interchangeably, as both experts agreed that this was true. Appx22; Appx81 (same); ECF No. 22 at 34 ("some bone plates may be used interchangeably for arthrodesis and osteosynthesis"). Substantial evidence also supports the fact that modifying Arnould's hole would have been a "relatively minor change" as the Board described. Appx26; Appx85. "Arnould teaches that the concave surface of hole 25 'is substantially complementary to an associated surface delimited by' the head of screw 30…." Appx19 (quoting Appx1161-1162, ¶27); Appx76 (same). "Petitioner proposes modifying hole 25 in Arnould's plate to incorporate the angled hole with a seated screw head configuration depicted in Figure 1 of Zahiri." Appx21 (citing Appx201-202, Appx204-205); Appx80 (citing Appx3196-3197, Appx3202-3203). A POSITA would have found modifying the bore geometry to accept a different, well-known screw type in a known cross-bone trajectory to be a trivial task. *See* Appx819-820, ¶193; Appx3755-3756, ¶¶248-249.

Finally, Appellant complains of the Board's use of the words "ordinary creativity," stating the Board used this as a "gap filler." ECF No. 22 at 43. Consistent with its selective analysis of the record and the Board's opinion, Appellant's argument ignores the evidence supporting the modification, and the POSITA's reasonable expectation of success in making the modification. As this Court recently reiterated, "[t]he expectation of success need only be reasonable, not absolute." *Transtex*, 2023 WL 1487425 at *5 (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007)). The Board thus found, "[t]here is no indication this configuration would not work if adapted to and sized for the dimensions of Arnould's plate and the anatomy of the metatarsal-phalangeal joint through the exercise of a POSITA's ordinary creativity." Appx26; Appx85. Like this Court found in *Transtex*, "[t]hat was sufficient." *Transtex*, 2023 WL 1487425 at *5.

## VI. ARNOULD, ZAHIRI, AND MYERSON '608 RENDER OBVIOUS CLAIMS 34 AND 35 OF THE '713 PATENT ('713 Patent Proceeding)

Turning to the final issue regarding the '713 Patent, Appellant contends in a single paragraph of its brief the Board's findings that claims 34 and 35 of the '713 Patent were obvious in view of Arnould, Zahiri, and Myerson '608 are not supported by substantial evidence. In large part, Appellant's argument focuses on the alleged impropriety of the Arnould and Zahiri combination. ECF No. 22 at 44. In framing the issue in that light, Appellant ignores the Board concluded that claim 32 (from

which claims 34 and 35 depend) was taught by Arnould alone.  Appx20; Appx44.

Moreover, Appellant cannot reasonably argue against adding in the locking screws

and threaded holes disclosed in Myerson '608 given that it conceded:

> Arnauld [sic] is directed to an arthrodesis plate for use in the lower
> extremities and specifically recognizes that bone plates used for the
> lower extremities are particularly prone to screw back-out due to
> loading conditions and constant use of the foot.

Appx1755.  For this reason, Appellant argued it would have been obvious to

incorporate threaded screw holes into Arnould to be used with locking screws with

a reasonable expectation of success "given that locking screws with threaded heads

that mated with threads in the plate holes were common at the time." *Id.*  Consistent

with these admissions and the arguments presented below, the Board again found

the testimony of Appellee's expert to be credible and persuasive.  Appx43.

## VII.  THE BOARD PROPERLY CONSTRUED THE TERM "BETWEEN" IN THE '751 PATENT AND DETERMINED THAT THE LIMITATION WAS TAUGHT IN THE ART ('751 Patent Proceeding)

Appellant next complains the Board erroneously construed "between" as used

in the claims of the '751 Patent because the Board rejected Appellant's argument

that "between" means "at, into, or across the space separating two objects, places, or

points."  ECF No. 22 at 45-46.  The Board's understanding of "between" is rooted

in the claims and disclosure of the '751 Patent itself and should be affirmed.

Appx61-65.

With the correct construction in hand, the Board properly concluded that Arnould alone or Arnould in view of Zahiri taught a third hole "between" the first and second holes.

## A.    The Board's Decision To Reject Appellant's Construction Of "Between" Should Be Affirmed

### 1.    The Intrinsic Record Supports The Board's Construction Of "Between"

When the intrinsic record is properly consulted *before* relying on extrinsic evidence, it is apparent the Board construed "between" correctly.  We begin with the language of the claims, which generally require first and second holes on each end of the bone plate and a third hole located "between" those first two holes.  Appx117, 3:19-20 ("a third hole located between said first hole and said second hole") ('751 Patent cl. 1), 4:3-4 ("a third hole and a fourth hole located between the first hole and the second hole") ('751 Patent, cl. 11), 4:54-55 ("a third hole located between said first hole and said second hole") ('751 Patent, claim 17).  In every claim of the '751 Patent, the third hole is broadly recited as merely "between" the first and second holes with no additional limitation as to location.  Appx117, 3:19-21.  As such, the claims do not support any limitation on the meaning of "between" as Appellant advances.

The specification of the '751 Patent further confirms that the Board properly construed the term "between" in the '751 Patent because figures 1-4 display a hole

1a1 (green below) on a tab 1a, where the hole is in a different plane than the main body and is offset as illustrated below.  Appx114-115, Figs. 1-4.



**Fig. 2**

Appx3482.  Even though the green hole is below the plate, it is still "between" the first and second holes.  Appx114, Fig. 2.  Any construction that the third hole must be between the first two holes in a specific planar orientation excludes a primary embodiment disclosed in the '751 Patent and should be rejected.  *On-Line Techs.*, 386 F.3d at 1138; *see also Google*, 92 F.4th at 1058; *Oatey*, 514 F.3d at 1276; *MBO Labs.*, 474 F.3d at 1333.

The specification provides further support for the Board's construction as the '751 Patent describes a "plate [that] has a formation that orients at least one screw."  Appx116, 1:45-48.  The formation can take shape as either "a tab that is angled according to an angle between 30º and 60º," the tab having a hole, or "a hole angled at an angle between 30° and 60°."  *Id.*, 1:49-55.  The angled tab is "cut out and deformed from the plate" using a cutting-punching operation.  *Id.*, 2:12-14.

Appellant does not contest the hole 1a1 on the tab 1a is in a different plane and different axis as the plate. *See* ECF No. 22 at 48.

The intrinsic evidence thus confirms the propriety of the Board's construction that the plain and ordinary meaning of the term "between" is not limited to the abstract definition "at, into, or across the space separating two objects, places, or points." *Phillips*, 415 F.3d at 1320-23.

### 2. Appellant Erroneously Resorts To Extrinsic Evidence To Undermine The Plain Meaning Of "Between"

While Appellant recognizes "claims should be construed in light of the plain and ordinary meaning to a POSITA in view of the intrinsic evidence," Appellant's analysis nevertheless begins with *extrinsic* evidence, namely, a dictionary definition of "between." ECF No. 22 at 48 (citing *Phillips*, 415 F.3d at 1312-13). According to Appellant, this dictionary informs how a POSITA would understand the claimed "third hole located ***between*** said first hole and said second hole." *Id.* at 49. Finally, Appellant suggests its construction based solely on *extrinsic* evidence is "consistent with the '751 Patent." *Id.* at 48.

Appellant's use of "a broad dictionary definition…whittled down only if contradicted by the specification" is improper. *Acumed*, 483 F.3d at 809 n.2; *see also Phillips*, 415 F.3d at 1320-21 (citing *Texas Digital Systems*, 308 F.3d at 1204). As this Court made clear in *Phillips*, consulting the specification "only after a [claim construction] determination is made, whether based on a dictionary, treatise, or other

source, as to the ordinary meaning or meanings of the claim term in dispute…limits the role of the specification in claim construction to serving as a check on the dictionary meaning of [the] claim term." *Phillips*, 415 F.3d at 1320.  Such a construction "elevat[es] the dictionary to such prominence that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent" which "risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.* at 1321.  This forbidden practice is precisely what Appellant has done in this case, defining the term based on a generic dictionary definition before concluding this abstract definition is "consistent with the '751 Patent."  ECF No. 22 at 46.  Appellant's flawed approach should be rejected. *Phillips*, 415 F.3d at 1320-21.

Even worse, later in its brief, Appellant wrongly equates "between" to "disposed along the spine," a term present in one of *Appellee's* patents—another source of extrinsic evidence.  ECF No. 22 at 55 (citing Appeal No. 23-1925, Appx4386, Appx2496-2498 (¶¶162-166)).  First, "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *Promptu Systems Corp. v. Comcast Corp.*, 92 F.4th 1372, 1383 (Fed. Cir. 2024) (quoting *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987)).  Terms in Appellee's patent have no bearing on the meaning of claim

terms in Appellant's patent, and Appellant has provided no reason to overcome this presumption. *Id.* And, even if "between" meant "disposed along the spine" as that term is used in Appellee's patents, it is disingenuous for Appellant to argue that hole 25 does not satisfy such a requirement when it argued that Arnould's hole 25 was "disposed along the spine" in another proceeding. *See, e.g.*, Appx4575.

Appellant's attempt to narrowly construe "between" contrary to the intrinsic record through extrinsic dictionary support is flawed, founded upon legally flawed principles, and should be rejected. *Phillips*, 415 F.3d at 1320-21.

### 3.    Appellant Acknowledges Its Proposed Construction Lacks Clarity

Later in its brief, Appellant appears to acknowledge its proposed construction of "between" lacks clarity, and attempts to provide a new construction on appeal that the claimed third hole "lie along 'said length defining a longitudinal axis' defined by 'a first end and a second end along said length.'" ECF No. 22 at 53-54. This argument has been waived. *Conoco*, 460 F.3d at 1358-59.

Even still, neither the claim language nor the specification supports this read of the claim, as the lone citation to Appellant's expert's deposition testimony confirms. ECF No. 22 at 54 (citing Appx1379-1380, 151:18-152:25); *see also* Appx74 ("There is nothing in the ordinary meaning of 'between' that would require the third hole to lie on the same axis between the first and second holes."). Claim 1, for example, requires only that the "third hole [be] located between said first hole

and said second hole" which themselves are located "at *or adjacent*" the first and second ends. Appx117, 3:9-21. Claims 11 and 17, which recite equivalent holes to claim 1's "third hole," don't even claim a longitudinal axis and instead describe the first and second holes as being "configured to align" with a first and second bone part. *Id.* at 3:67-4:4 ("a third hole and a fourth located *between* the first hole and the second hole"), 4:48-55 ("a third hole located *between* said first hole and said second hole"). Appellant's arguments further confirm the inadequacy of its proposed constructions, and reveal why the Board's adopted construction is correct.

### B. The Board Properly Concluded The Prior Art Renders Obvious "A Third Hole Between Said First Hole And Said Second Hole"

#### 1. Substantial Evidence Of Obviousness Exists Based On Arnould

Appellant no substantial evidence supports the Board's decision finding the prior art renders obvious the claimed "third hole located between said first hole and said second hole," claiming that Appellee did not even address the element below. ECF No. 22 at 49 (citing Appx3195-3196, Appx3204, Appx3209). To justify this argument, Appellant provides a single annotated image from the Petition and argues that nowhere in the figure does Appellee explain how hole 25 is between the first and second holes. ECF No. 22 at 50 (citing Appx3196). In the pages of the Petition preceding the cited image, Petitioner included additional annotated figures

identifying the location of the claimed first holes and second holes in Arnould's plate:

 

Appx3194, Appx3195.  Armed with this background, the Petition then argues that hole 25 is the claimed third hole.  Appx3196.  This is shown again with respect to claim 17 of the '751 Patent:



*Fig.1*

 Appx3210.  This is precisely what the Board found at institution.  Appx3335 ("From Petitioner's annotated Figure 2 and discussion concerning screw 30 and hole 25, it appears that hole 25 is between the first and second holes as required." (citing Appx3196)).

After Appellant advanced its claim construction theory for "between" in its Patent Owner Response discussed above, Appellee properly addressed the flaws with this construction in Reply, particularly as it relates to the application of the plain meaning of "between" to the disclosure of Arnould. *Parkervision, Inc. v. Vidal*, 88 F.4th 969, 980 (Fed. Cir. 2023) ("Once [Patent Owner] introduced a claim construction argument into the proceeding through its patent owner response, [Petitioner] was entitled in its reply to respond to that argument and explain why that construction should not be adopted."). The Board agreed this argument was properly responsive to Appellee's "questioning of the ordinary meaning of 'between' and is appropriate rebuttal argument." Appx75.

Appellee's reply included the following comparison between the '751 Patent and Arnould:



Appx3503; *see also* Appx74. These figures confirm the similarities between the '751 Patent and Arnould, and solidify a POSITA would find the claimed "third hole located between said first hole and said first hole" obvious in view of Arnould. Appx3504. The Board's final determination of obviousness in view of Arnould alone is, therefore, correct. *Parkervision*, 88 F.4th at 982.

Finally, even under Appellant's construction, Arnould renders claim 1 of the '751 Patent obvious. As depicted in the comparison figures above, Arnould's hole 25 is "at, into, or across the space separating two objects, places, or points," Appellant's original proposed construction (ECF No. 22 at 46) in the same way the "third hole" of the '751 Patent's lone drawn embodiment is "at, into, or across the space separating" the first and second holes of that plate. Appx3503; *see also*

Appx74. As the Board agreed, "[i]n both figures, the third hole is between the first and second holes, even though both are below the main body of the plate." Appx75. Thus, the Board's obviousness conclusion would still stand under Appellant's faulty construction, warranting affirmance.

### 2. Substantial Evidence Of Obviousness Exists Based On Arnould In View Of Zahiri

Even if this Court agrees Arnould lacks disclosure of the claimed third hole, the Board's obviousness opinion regarding the alternative analysis of Zahiri permits affirmance. Appx78-80; Appx3196-3198. Appellant apparently does not dispute that Zahiri discloses the claimed third hole because Appellant's brief lacks any analysis of Zahiri regarding the claimed third hole. ECF No. 22 at 49-55. Appellant took a similar approach below, presenting no argument against Appellee's position that Zahiri indisputably teaches "a third hole between said first hole and said second hole." Appx3443-3445 (addressing only the motivation to combine Arnould and Zahiri); Appx3568-3569 (same). The Petition included the following annotated figure 8 from Zahiri, showing the third hole located between said first hole and said second hole was known in the art:



Appx3198 (citing Appx1178 (annotated)). The Board reproduced this annotated figure in its final written decision. Appx78-79.

Instead, Appellant's sole challenge is its contention that the Board's decision regarding combinability lacks substantial evidence. For the reasons addressed above in Section V, Appellant's arguments fail and the Board's decision should, therefore, be affirmed.

## VIII. THE BOARD CORRECTLY FOUND CLAIM 6 OF THE '751 PATENT OBVIOUS OVER ARNOULD, ZAHIRI, MYERSON '592, AND THE KNOWLEDGE OF A POSITA ('751 Patent Proceeding)

Appellant next chides the Board for allegedly confusing Myerson '592 and Myerson '608. ECF No. 22 at 71. Appellant's attack focuses primarily on a lone paragraph in the decision, which addressed the motivation to combine Arnould, Zahiri, and Myerson '592, and ignores the remainder of the Board's analysis which

addresses this art. When viewed in context, it is clear the Board did not err in finding claim 6 of the '751 Patent obvious, and any reference to Myerson '608 was harmless.

In the Petition, Appellee directed the Board to Myerson '592, noting "the plate 10 [of Myerson '592] is configured to be positioned anywhere in the mid-foot." Appx3216 (citing Appx4021, ¶21 ("the plate 10 is configured to be positioned anywhere along the mid-foot, not just at the location shown in FIG. 1.")). The Petition further explained, "Myerson ['592] guides a POSITA to substitute differently contoured plates in order for the plate to be positioned across the cuboid bone." *Id.* (citing Appx4021, ¶¶21-22 ("geometry of the middle cuneiform may require a differently contoured plate than a plate positioned across the cuboid bone")). A POSITA would have, therefore, understood "that if a joint in the mid-foot needed to be fused, Arnould's bone plate would be modified to conform to the bones in the mid-foot." *Id.*

The Board cited these same disclosures, as well as the Petition, in "find[ing] Petitioner's arguments and evidence persuasive." Appx96-97. The Board also cited Mr. Sherman's testimony that "a POSITA would understand that Myerson ['592]'s bone plate is configured to fuse the tarsometatarsal joint," and "that Arnould's bone plate would easily be configured to contour to the bones in the mid-foot and fuse the tarsometatarsal joint." *Id.* (quoting Appx3761, ¶346). Weighing these disclosures and expert testimony, the Board concluded that "Petitioner has articulated sufficient

reasoning with rationale underpinning for combining both Zahiri's angled hole configuration and Myerson ['592]'s teaching of fusing the tarsometatarsal joint with Arnould's plate."  Appx98.

Appellant ignores this evidence, and instead pinpoints the Board's citation to paragraph 343 of the Sherman declaration.  ECF No. 22 at 71-72 (citing Appx97, Appx3790 (¶343)).  This paragraph mistakenly states "Myerson discloses a bone plate for fusion of the MTP joint as well as for receiving a locking screw in combination with threaded holes to lock the fixation screws in place."  Appx3790, ¶343.  The Board cites this paragraph and quotes the language above in a parenthetical.  Appx97.  This citation, Appellant argues, "is not simply a clerical error but rather forms the foundation for [the Board's] obviousness finding."  ECF No. 22 at 72.

This citation does not, however, "form the foundation" of the Board's obviousness finding.  For example, as noted above, the Board reproduced Figure 1 of Myerson '592 and quoted Mr. Sherman's expert testimony confirming "that Arnould's bone plate would easily be configured to contour to the bones in the mid-foot and fuse the tarsometatarsal joint."  Appx96-97 (quoting Appx3761, ¶346); *see also* Appx3506 ("Mr. Sherman's statements specific to Ground 5 confirm he was referring to the disclosure of the tarsometatarsal joint in Myerson ['592] with respect to claim 6 and describe that a POSITA would understand how to apply Arnould to

the TMT joint in view of Myerson ['592]'s disclosure." (citing Appx3790-91, ¶¶345-347)).   Appellant presented no evidence rebutting the applicability of the Arnould plate to fuse a tarsometatarsal joint.   Appx97-98 (addressing Appellant's only substantive argument, that "the principles described in Arnould are specific to MTP joints and teach away from the modification of the plate for use with the TMT joint." (quoting Appx3454)).

Finally, Appellant's reliance on *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990 (Fed. Cir. 2023), fails to support its argument.   In *Corephotonics*, the two parties agreed that the Board's discussion of the prior art was incorrect; while the Board said the prior art taught "multiple cameras with differing *fields of view*," the references actually taught "cameras with different *points of view*."   *Corephotonics, Ltd.*, 84 F.4th at 1013.   The appellee in *Corephotonics* argued this was a typographical error, but this Court could not find a record basis to agree.   *Id.*   In this case, however, the parties do not agree that there was an incorrect discussion of the prior art.   Instead, the Board provided a well-reasoned analysis of the prior art, including citation to specific figures and paragraphs of the correct Myerson '592 reference, and rationale to combine that art, none of which is addressed in Appellant's brief.   Appx96-97.

The Board's conclusion that claim 6 of the '751 Patent is obvious of Arnould, Zahiri, Myerson '592, and the knowledge of a POSITA should, therefore, be affirmed.  *Merck*, 808 F.3d at 837.

## IX.    THE BOARD CORRECTLY FOUND THE PETITION SATISFIED 35 U.S.C. § 312(a)(3) ('751 Patent Proceeding)

### A.    The Board's Decision To Institute Is Not Appealable

Appellant challenges the Board's decision to institute at all, a decision that is not appealable.  Specifically, Appellant contends the Petition for the '751 Patent was "incomprehensible" despite the fact that it responded to and presented arguments for each section of the Petition it desired to.  ECF No. 22 at 68.  The statute Appellant relies on states "[a] petition filed under section 311 may be considered only if—the petition identifies, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim…."  35 U.S.C. § 312(a)(3). This statute merely sets forth minimum requirements for petitions to be considered for institution.  *Id.*

The PTAB has wide latitude to determine the petitions for review it will consider.  *See Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018) (citing *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1371 (2018)).  Once the PTAB institutes, the decision to institute is non-appealable.  *Cuozzo*, 136 S. Ct. at 2139 (citing 35 U.S.C. ¶314(d)).

"This prohibition applies equally to complaints regarding the Patent Office's determination that the information presented in the petition shows that there is a reasonable likelihood of success, and to situations "where a patent holder grounds its claim ***in a statute closely related to that decision to institute inter partes review***…." *Id.* (emphasis added). *Id.* Appellant's "incomprehensible petition" argument is, therefore, moot. *Id.*

### B. The Body Of The Petition Articulated The Challenged Claims, Grounds On Which The Challenges Were Based, And Evidence Supporting The Grounds

Even if Appellant's argument is considered, it easily falls apart. Appellant's complaint boils down to a mismatch between the section headings accompanying the evidence, arguments, and support in the body of the Petition on the one hand, and the headings listed in the appendix on the other. ECF No. 22 at 69. Dedicating pages in its brief to discuss a minor mismatch between an appendix—which is not considered part of the petition for word count purposes and is solely for reference— and the body of the Petition, which includes the evidence and testimony supporting the invalidity arguments, showcases the straws at which Appellant is grasping in an attempt to revive the claims. 37 C.F.R. § 42.8.

The "incomprehensible" section headings in the Petition denote the limitation considered in that section by stating the first few words of that limitation. *See* Appx3117-3120 (table of contents showing the section headings). Appellant's

complaint is undermined by the fact that it addressed the limitations it desired to in its papers below. *See, e.g.*, Appx3416 ("In addressing mislabeled claim element '[17h],' [as identified in the Petition] which appears to include the last clause of '[17d]' set forth in the Claim Appendix…"). Tellingly, Appellant does not complain that it was unable to address Appellee's evidence supporting any portion of any claim based on the division of the claim in the Petition. *See* ECF No. 22 at 68-70.

### C.    Appellant's Cited Cases Are Irrelevant To The Issue At Hand

The cases Appellant cites provide no support for its argument. First, *Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353 (Fed. Cir. 2020), details a situation where the litigant's papers included an argument and evidence the Board "erroneously stated" was not present in the papers. *Id.* at 1359. In *Netflix Inc. v. DivX, LLC*, No. 2022-1043, 2023 WL 3115576 (Fed. Cir. Apr. 27, 2023), the Board similarly found a limitation lacking in the prior art despite acknowledging in the final written decision that this very limitation was taught by the prior art. *Id.* at *5. The Board's two-sided analysis resulted in this Court's remand. *Id.* at *5-6.

*Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371 (Fed. Cir. 2023) ("*Netflix II*"), is equally inapposite. There, this Court held "[a] petitioner may not rely on a vague, generic, and/or meandering petition and later fault the Board for failing to understand what the petition really meant." *Id.* Unlike in *Netflix II*, Appellee's

petition was not vague, generic, or meandering and neither the Board nor Appellant ignored arguments "allegedly raised" in the petition.  *Id.*

Appellee's petition "identifies, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim."  35 U.S.C. § 312(a)(3).  Appellant's argument to the contrary is both non-appealable and contrary to the facts of this case.  The Board's decision should, therefore, be affirmed.

## <u>CONCLUSION</u>

For the reasons detailed above, this Court should affirm the Board's decisions finding claims 32-39 of the '713 Patent and 1-3 and 6-18 of the '751 Patent invalid.

Dated: April 25, 2024

Respectfully submitted,

By:    /s/ Devon C. Beane
       Devon C. Beane
       devon.beane@klgates.com
       Jason A. Engel
       jason.engel@klgates.com
       Jonah Heemstra
       jonah.heemstra@klgates.com
       K&L GATES LLP
       70 W. Madison Street, Suite 3100
       Chicago, IL 60602
       Telephone: (312) 807-4436
       Facsimile: (312) 827-8000

       *Attorneys for Appellee*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  23-2397, 23-2398

**Short Case Caption:**  Stryker European Operations Holdings LLC v. OsteoMed LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes _13,961_ words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _04/25/2024_    Signature:  /s/ Devon C. Beane

Name:  Devon C. Beane

Save for Filing